# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE PEOPLE OF THE VIRGIN ISLANDS, <br><br>Plaintiffs,<br><br>v.<br><br>JAMES A. AUFFENBERG, JR., AUFFENBERG ENTERPRISES OF ILLINOIS, INC., PETER G. FAGAN, JAMES W. FERGUSON, III, J. DAVID JACKSON, KAPOK, INC., KAPOK MANAGEMENT, L.P., ST. CLAIR I, LLC, ST. CLAIR II HOLDINGS VI, LLC,<br><br>Defendants. | CRIM. NO. 2007-0047 |

## MEMORANDUM OPINION

Finch, J.

    THIS MATTER comes before the Court on Defendant J. David Jackson's Motion to Suppress Evidence. Jackson argues that the affidavits and exhibits supporting two search warrants submitted to the Magistrate Judge failed to adequately state probable cause. He also maintains that certain materials seized during the resulting raid and search of Kapok Management, L.P's offices were protected by the attorney-client privilege and were subsequently unlawfully used, and disclosed.

    In this opinion, the Court addresses only the question of whether the evidence must be suppressed because the search warrants were issued in violation of Jackson's Fourth Amendment constitutional right. The distinct question of whether the seized materials were improperly used and disclosed and any repercussions will be considered subsequently.

**I.     Background**

Jackson and others are charged with being a member of a *Klein* conspiracy,[1] as well as aiding and abetting tax evasion, the filing of false tax returns, wire fraud and an attendant forfeiture allegation.  The Superseding Indictment alleges that Defendants engaged in a scheme to defraud a legitimate United States Virgin Islands economic development program.  Defendant Kapok Management, L.P. [hereinafter "Kapok"] obtained a beneficiary certificate under this program that granted an exemption from Virgin Islands gross receipt taxes and a 90% United States income tax reduction credit to bona fide Virgin Islands residents for eligible income derived from eligible activity.  Defendants purportedly conspired to falsely claim certain funds, characterized as "management fees," as eligible income derived from eligible activity and to falsely claim bona fide residency in the United States Virgin Islands.

On May 14th and 15th 2003, Internal Revenue Service Criminal Investigation Special Agents applied for search warrants for the Kapok offices in St. Croix, United States Virgin Islands, and for Horne CPA Group in Jackson, Mississippi.  The warrants were issued and executed and evidence was seized.[2]  Jackson seeks the suppression of such evidence on the grounds that the affidavits submitted in support of the search warrants contain numerous

---

[1]  "The term 'Klein conspiracy' comes from the Second Circuit case of United States v. Klein, 247 F.2d 908 (2d Cir.1957), and has become the generic term for a conspiracy to frustrate the government (particularly the IRS) in its lawful information gathering functions."  United States v. Alston, 77 F.3d 713, 717 (3d Cir. 1996).

[2]  Although the Government submitted the affidavits and exhibits that Jackson references, neither party submitted the challenged search warrants themselves.  The Court assumes, in this Memorandum Opinion, that the search warrants that were issued authorized searching and seizure of evidence believed to show a conspiracy in violation of 18 U.S.C. § 371  and attempt to evade or defeat tax and aid and assist in the preparation of false income tax returns in violation of 26 U.S.C. §§ 7201, and 7206(2), respectively.

conclusory statements relating to the credibility of unnamed informants and a former Kapok partner, and that the activity described in the affidavits is not of a criminal nature.

**II.     Standard for Issuing Search Warrant**

"The Warrant Clause of the Fourth Amendment to the United States Constitution provides in pertinent part that 'no Warrants shall issue but upon probable cause, supported by Oath or affirmation.'" United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (quoting U.S. Const. amend IV).  Rule 41(c) of the Federal Rules of Criminal Procedure states that a warrant may issue upon an affidavit sworn to before a federal magistrate if the magistrate is satisfied that the affidavit is supported by probable cause.  "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."  Brinegar v. United States, 338 U.S. 160, 175-176 (1949) (quoting Carroll v. United States, 267 U.S. 132, 161 (1925)).

In conducting the analysis of whether an affidavit established probable cause to search, the Court "must examine the 'totality of the circumstances' as set forth in the affidavit." Id. at 390.  The Court's task is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id. (quoting Illinois v. Gates, 462 U.S. 213, 253 (1983)).  Direct evidence need not link criminal activity to the place to be search; it is enough that an accumulation of circumstantial evidence indicates a fair probability of the presence of contraband at the location to be searched.  United States v. Burton, 288 F.3d 91, 103 (3d Cir.

2002).

"[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause." Franks v. Delaware, 438 U.S. 154, 165 (1978). The Court must "consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experience." Yusuf, 461 F.3d at 390.

The affidavit supporting a search warrant may be based upon hearsay. Jones v. United States, 362 U.S. 257, 269 (1960). However, the affidavit should contain information explaining why the officers believe the supporting information to be reliable. See United States v. Leon, 468 U.S. 897, 904-05 (1984).

Although proof beyond a reasonable doubt of criminal activity is not required, more than "a bare suspicion" is required. Brinegar, 338 U.S. at 175. Rumor alone is not enough to establish probable cause for issuance of a search warrant. United States v. Harris, 403 U.S. 573, 597 (1971). "[P]robable cause which will justify the issuance of a search warrant is less than certainty or proof, but more than suspicion or possibility, the test being whether the allegations of the supporting affidavit warrant a prudent and cautious man in believing that the alleged offense has been committed." United States ex rel. Campbell v. Rundle, 327 F.2d 153, 163 (3d Cir. 1964) (quotation omitted).

**III.    Jackson's Expectation of Privacy in Horne CPA Group's Premises**

The Government challenges Jackson's "standing" to suppress the evidence seized from the Horne CPA Group.[3] According to the Government, Jackson had no proprietary interest in the

---

[3] In United States v. Perez, 280 F.3d 318, 338 n. 16 (3d Cir. 2002), the Third Circuit recognized that whether a defendant is entitled to contest the legality of a search focuses on the

Horne CPA Group or in the records that were seized.

"[A] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." <u>United States v. Baker</u>, 221 F.3d 438, 442 (3d Cir. 2000) (<u>quoting</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 134 (1978)).  As a general rule, a defendant cannot challenge admission of evidence seized from a third party's premises over which the defendant has "no proprietary or possessory interest."  <u>See</u> <u>Brown v. United States</u>, 411 U.S. 233, 229 (1973).  Moreover, a taxpayer cannot reasonably claim, under either the Fourth or Fifth Amendment, an expectation of protect privacy as to business records in possession of his accountant.  <u>See</u> <u>Couch v. United States</u>, 409 U.S. 322, 335-36 (1973). "[T]here can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return." <u>Id.</u> at 335.

"To show a legitimate expectation of privacy in searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable, that is, one that society is willing to accept." <u>Warner v. McCunney</u>, 2008 WL 73680, at *2 (3d Cir. Jan. 8, 2008).  Jackson has failed to show that he had a proprietary interest in the office of the Horne CPA Group or in the records that were seized.  Accordingly, Jackson's motion to suppress the evidence seized in the execution of the search warrant as to the Horne CPA Group is denied because Jackson did not have a legitimate expectation of privacy in the premises or any of its contents.

---

defendant's expectation of privacy under the Fourth Amendment, rather than standing.

IV.     **Probable Cause Analysis**

The IRS Special Agent affiant discussed two undercover IRS agents' activities in support of the issuance of the warrant to search the offices of Kapok Management, L.P. According to the affiant, the undercover IRS agents first contacted Defendants Ferguson, Fagan and Jackson, the principals of Kapok Management, L.P., in February 2002. The undercover agents portrayed themselves as a financial planner and a wealthy investor. They conveyed to Ferguson, Fagan, and Jackson, that all of the income that would be run through Kapok would be from passive investments in the United States and from the sale of an asset that was inherited from a relative of one of the undercover agents.

Kapok assisted the wealthy investor undercover agent in forming a limited liability company. Kapok explained that the limited liability company would allowed Kapok to divert the undercover agent's income from the United States to the Virgin Islands. Kapok would receive large management fees for the services it purported to provide. In reality, the undercover agent would decide how much money to send to Kapok each month. After sending this money to Kapok, Kapok would deduct a small percentage to cover operating expenses and fees and return the remainder to the undercover agent. No real services would be provided to justify the monetary transactions. In effect, the undercover agent would funnel money through Kapok's bank accounts back to himself.

The undercover agent paid $50,000 to become a Kapok partner on June 12, 2002. At that time, Jackson permitted the undercover agent to backdate the investment agreement and the checks used for this payment to May 8, 2002, the date of the undercover agent's first meeting at Kapok. This backdating allowed the undercover agent to pay more management fees to Kapok, resulting in a lower tax liability for the undercover agent. During the June 12, 2002 meeting,

Jackson also advised the undercover agent that he could claim May 8, 2002 as the start date for his residence in the United States Virgin Islands. As of June 12, 2002, Jackson believed that the undercover agent had only traveled to the United States Virgin Islands twice to meet with Kapok, had never looked for a place to reside in the Virgin Islands and had stayed on both visits in hotels.

The undercover agent met with a realtor recommended by Kapok to secure a residence in St. Croix. The realtor revealed that he had located a cheap apartment in a low-income area for another Kapok partner who was looking for a mailing address. According to the realtor, the partner had not been in St. Croix since he had signed the apartment lease. Upon leaving the apartment, the realtor mentioned that he could have the electricity turned on at the apartment, but that it would not be necessary since the undercover agent would never be there. The realtor gave the only key to the apartment to Kapok so that the undercover agent's mail could be forwarded to him in the continental United States. The undercover agent subsequently described to Jackson the apartment he had rented and told Jackson that he could not remember the exact location.

In 2002, the undercover agent sent $2.65 million dollars through Kapok as purported management fees. The undercover agent did not perform any services at or through Kapok to justify payment of these fees. Nor did Kapok provide any services to the undercover agent or his limited liability company. In January 2003, the undercover agent made a payment to Kapok by check for $150,000. Kapok allowed the undercover agent to backdate that check to reflect a date in December 2002 so that the $150,000 could be included in the undercover agent's 2002 management fee payments to Kapok to qualify for the tax credit. Kapok assisted the undercover agent in preparing and filing an individual income tax return for 2002 to claim a tax credit of over $900,000.

The affiant also relates information he claims was provided to him by informants – former employees of a Kapok partner as well as a former Kapok partner. Although Jackson does not contest any of the affiants' description of the undercover agents' activities, Jackson complains that the statements ascribed by the affiant to the informants were conclusory. According to Jackson, the affiant does not give sufficient information about the informants for the Magistrate Judge to have independently evaluated the informants' veracity or the basis of their knowledge. In addition, Jackson challenges whether the affidavit establishes probable cause because it incorporates statements attributed to the cooperating former Kapok partner in which the partner exaggerates, speculates, and hypothesizes.

In determining whether a search warrant meets the probable cause threshold, the Court is warned not to use the "divide and conquer" approach, as Jackson suggests here. See Yusuf, 461 F.3d at 390. Keeping this in mind, the Court need not even reach the question of what weight it should give the affiants' presentation of the comments made by the former employees of a Kapok partner, or the former Kapok partner. The evidence concerning the experiences and transactions of the undercover agents are sufficient, in an of themselves, to demonstrate probable cause to issue a search warrant. However, even if the undercover agents' activities would not, standing alone, be enough to show probable cause, they corroborate and are corroborated by the statements of the former employees of a Kapok partner and the former Kapok partner.

Contrary to Jackson's argument, the conduct detailed in the affidavit supporting the search warrant cannot be characterized as innocent. Backdating checks to obtain tax benefits constitutes evasion of taxes, notwithstanding the legitimacy of the beneficiary certificate. Whether or not the standards for establishing residency in the Virgin Islands were clearly contoured in 2002, the evidence presented in the affidavit would warrant a prudent and cautious

man in believing that the undercover agents would not have been able to meet any reasonable residency criteria.  A person of reasonable caution would believe that paying money as management fees, without performing any work in return for receiving management fees, for the sole purpose of reducing tax liability, would constitute an attempt to defeat tax.  Finally, the affiant indicated that the undercover agent were assisted by Kapok in preparing his false income tax return.  From this, the Magistrate Judge properly found that the allegations that Kapok aided and assisted in the preparation of false income tax returns was supported by probable cause.

### V.  Conclusion

The Court does not reach the question of whether there was probable cause to search the office of the Horne CPA Group because Jackson did not show that he had a legitimate expectation of privacy such that his Fourth Amendment rights could be violated by such search.  The Court finds that a probable cause foundation was established for the issuance of the  search warrant authorizing the search of the offices of Kapok Management, L.P.  Therefore, there is no basis, under the Fourth Amendment, for suppression of the evidence seized during the execution of that search warrant.

ENTER:

DATE:       May 5, 2008                         _____/s/_____
                                                RAYMOND L. FINCH
                                                DISTRICT JUDGE