IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| et al. | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES A. AUFFENBERG, JR., | : | |
| et al. | : | NO. 2007-0047 |

MEMORANDUM

Bartle, C.J.                                          August 26, 2008

On March 18, 2008, a grand jury returned a Second
Superseding Indictment against defendants:  (1) James A.
Auffenberg, Jr.; (2) Auffenberg Enterprises of Illinois, Inc.;
(3) Peter G. Fagan; (4) James W. Ferguson, III; (5) J. David
Jackson; (6) Kapok, Inc.; (7) Kapok Management, L.P.; (8) St.
Clair I, LLC; and (9) St. Clair II Holding V.I., LLC.  This
Indictment contains thirty-five counts.  In short, it alleges
that the defendants participated, to varying degrees, in "a
scheme to defraud a legitimate United States Virgin Islands
economic development program and to unlawfully evade taxes by
engaging in financial transactions devoid of any economic
substance (sham transactions) in order to create the illusion of
a management consulting business earning income from services
performed with the Virgin Islands ...."  Second Superseding
Indictment ¶ 1.

Before this court are the motions of defendants, James
A. Auffenberg, Jr. ("Auffenberg") and James W. Ferguson, III

("Ferguson"), to dismiss the Second Superseding Indictment on the ground that it violates their due process rights under the Fifth Amendment to the United States Constitution.  Defendants maintain that two tax provisions of the Internal Revenue Code upon which the indictment is based are impermissibly vague and ambiguous. All other defendants have joined the motions to dismiss.

I.

The United States income tax laws apply in the Territory of the Virgin Islands.  48 U.S.C. § 1397.  Whenever used in the Internal Revenue Code, the term "United States" refers to the fifty states and not the Virgin Islands.  26 U.S.C. § 7701(a)(9).  If an individual is a citizen or resident of the United States and "has income derived from sources within the Virgin Islands, or effectively connected with the conduct of a trade or business within such possession, for the taxable year," that individual must file an income tax return with both the United States Internal Revenue Service ("IRS") and the Virgin Islands Bureau of Internal Revenue ("BIR").  Id. § 932(a).  Such an individual must "pay the applicable percentage of the taxes imposed" to the Virgin Islands.  Id. § 932(b)(1).  The "applicable percentage" is determined by calculating the "income derived from sources within the Virgin Islands and deductions properly apportioned or allocable thereto."  Id. § 932(b)(2).

However, if an individual is "a bona fide resident of the Virgin Islands at the close of the taxable year," that individual must file an income tax return with the BIR only.  Id.

-2-

§ 932(c).**1**  Such an individual pays to the Virgin Islands
whatever income taxes are due.  48 U.S.C. § 1397.  So long as a
"bona fide resident of the Virgin Islands" reports "income from
all sources and identifies the source of each item" on his or her
Virgin Islands return and "fully pays his [or her] tax liability
... to the Virgin Islands," the taxpayer will not owe any
additional income taxes to the United States.  26 U.S.C.
§ 932(c)(4).

The income tax liability for residents of the United
States and residents of the Virgin Islands is the same.
Regardless of residency, individuals' incomes are taxed at the
same rate.  This is commonly called the "mirror system," under
which the Internal Revenue Code is applied to the Virgin Islands
by merely substituting "Virgin Islands" for "United States"
throughout.  Chicago Bridge & Iron Co. v. Wheatley, 430 F.2d 973,
975-6 (3d Cir. 1970), cert denied, 401 U.S. 910 (1971).

Generally, the Government of the Virgin Islands has no
authority to reduce the income tax liability of its residents
below that of residents of the United States.  26 U.S.C.
§ 934(a).  There are, however, several exceptions to this general
rule.  The Government of the Virgin Islands may decrease tax
liability that "is attributable to income derived from sources
within the Virgin Islands or income effectively connected with

---

1.  In 2004, § 932(c) was amended and the phrase "during the
entire taxable year" replaced "at the close of the taxable year."
American Jobs Creation Act of 2004, H.R. 4520, 108th Cong.
(2004).

the conduct of a trade or business within the Virgin Islands."
Id. § 934(b)(1).  This exception does not apply to individuals
who file income tax returns with the IRS and the BIR, and
therefore pay only a portion of their income tax liability to the
Virgin Islands.  See id. § 932(a) & (b); § 934(b)(2).  Thus, the
Government of the Virgin Islands may lower the amount of taxes
due only if the income at issue is "derived from sources within
the Virgin Islands or income effectively connected with the
conduct of a trade or business within the Virgin Islands" and the
individual is a "bona fide resident of the Virgin Islands at the
close of the taxable year."  See id. §§ 932(c) & 934(b)(1).

        The Second Superseding Indictment states that in 1998
defendants, Peter G. Fagan ("Fagan")[2] and Ferguson,[3] formed
Kapok, Inc. ("Kapok")[4] and Kapok Management, L.P. ("Kapok
Management"),[5] both Virgin Islands entities.  Fagan and Ferguson
sought to include Kapok Management, a management consulting
business, in a business development program enacted by the
Government of the Virgin Islands.  See 29 V.I.C. § 701, et seq.

_____

2.  Fagan is alleged to be a United States citizen, now residing
in De Leon, Texas.  Second Superseding Indictment ¶ 17.

3.  Ferguson is alleged to be a United States citizen, now
residing in Plano, Texas.  Second Superseding Indictment ¶ 18.

4.  Kapok was incorporated on April 21, 1998 under the laws of
the Virgin Islands.  Second Superseding Indictment ¶ 19.  Fagan
served as its President and Ferguson as its Vice President.  Id.

5.  Kapok Management was formed on June 1, 1998 under the laws of
the Virgin Islands.  It was formed by Kapok, as general partner,
and Fagan and Ferguson, as limited partners.  Second Superseding
Indictment ¶ 20.

-4-

The program was "designed to promote the development and diversification of the Virgin Islands economy and benefit Virgin Islands inhabitants by establishing and preserving employment opportunities."  Second Superseding Indictment ¶ 8.  To that end, businesses that qualified for the business development program received significant tax exemptions and credits, as permitted under 26 U.S.C. § 934(b).

The program was available to a variety of different types of businesses, including a category called designated service businesses ("DSB").  Once a business was approved as a DSB, it could enter into an agreement with the program's administrator, the Industrial Development Commission ("IDC").[6] When a business entered into such an agreement it received a beneficiary certificate, which entitled it to certain tax exemptions and credits.  See 29 V.I.C. §§ 713a & 713b.

Fagan and Ferguson, on behalf of Kapok Management, applied for approval of it as a DSB.  The application process included, "written submissions, an oral presentation to the IDC Board, review of the application by the IDC Board in executive session, and submission of recommended applications to the Virgin Islands Governor for final approval or rejection."  Second Superseding Indictment ¶ 8.  Kapok Management thereafter was

_____

6.  Until March 1, 2001, the program administrator was the IDC. Thereafter, the Economic Development Commission ("EDC") administered the program.

approved as a DSB and received a beneficiary certificate, which provided:

> The grant of benefits hereinafter described is for the beneficiary or any successors approved by the Commission to conduct the business of owning and operating a designated service business providing financial, economic, and management consulting services, including business planning and development, estate planning, risk management, asset protection, financial analysis, financial planning, professional office restructuring, and general business and computer support services to clients outside the United States Virgin Islands.

Id. ¶ 61.

The tax exemptions and credits to which Kapok Management were entitled under the beneficiary certificate were limited to its "eligible income," which was defined as "income derived from the business or industry for which the certificate is granted, in the DSB case, income effectively connected with the certificate holder's conduct of its approved trade or business within the Virgin Islands on behalf of clients located outside the Virgin Islands, as specified in the certificate ...." Id. ¶ 9.

The tax savings, where applicable, were significant. Kapok Management's beneficiary certificate entitled it to an exemption from local gross receipts taxes and a 90 percent United States income tax reduction credit. Again, however, these benefits were only available for "eligible income derived from eligible activity." Id. ¶ 13.

-6-

The tax benefits conferred on Kapok Management were in reality tax benefits for its partners.  As a limited partnership, Kapok Management does not pay income taxes.  Instead, any income earned is distributed to its partners who in turn are liable for any income taxes.  29 V.I.C. § 713b(e).  Accordingly, Kapok Management's partners who were in fact bona fide residents of the Virgin Islands could claim exemption from local gross receipts taxes and a 90 percent United States income tax reduction credit on "eligible income derived from eligible activity."

Beginning in 1999, Fagan and Ferguson began selling limited partnerships in Kapok Management to United States taxpayers.  Fagan and Ferguson were assisted in their efforts by J. David Jackson ("Jackson"),[7] whom Fagan and Ferguson had recruited to be the Chief Financial Officer and General Manager of Kapok Management.  Numerous limited partnerships were sold, including seven in 1999, thirty-one in 2000, twenty in 2001, and nineteen in 2002.

Upon joining the Kapok Management partnership, the limited partners would pay management fees to Kapok Management. The Second Superseding Indictment states that the management fees were not paid to Kapok Management for legitimate business services but to evade United States income taxes.  Each limited partner decided how much in management fees he or she would pay to Kapok Management.  The limited partners calculated this amount

---

7.  Jackson is a United States citizen, residing in St. Croix, Virgin Islands.  Second Superseding Indictment ¶ 21.

"based upon the net taxable income of their own United States
mainland businesses or financial activities of any type,
including ... net short term gains from the one-time sale of
securities (day trading), gains from the one-time sale of real
property, stock, or a business, and the passive receipt of rents,
royalties and interest."  Second Superseding Indictment ¶ 40.
The limited partners would then use various sections of the
Internal Revenue Code to claim deductions or offsets based upon
the management fees paid to Kapok Management.  The management
fees were then claimed as "eligible income" under the Kapok
Management beneficiary certificate.

Once a limited partnership was sold, the new limited
partner in Kapok Management would be hired as one of its
employees, with the title "senior project manager." As a "senior
project manager," the limited partner would then be paid a salary
from Kapok Management.  The salary paid to each limited partner
for his or her job as "senior project manager" was taken from the
money that individual paid to Kapok Management for management
fees.  These salaries were the means by which Kapok Management
funneled the management fees paid to it back to the limited
partner.  In this way it provided the limited partner with the
tax benefits conferred on Kapok Management under its beneficiary
certificate.

Kapok Management did employ "a small number of actual
Virgin Islands residents to perform necessary office work ...
[including] some legitimate business services for various clients

-8-

of various enterprises ...." Id. ¶ 46.  It is alleged, however, that the work done by this small number of employees did not earn sufficient management fees to earn a profit above those employees' wages.  Id.

Defendant, Auffenberg, allegedly a United States citizen residing in Swansea, Illinois, purchased one of the limited partnerships in October, 2000.  He retained Kapok Management as a managing consultant for his business, Auffenberg Enterprises of Illinois, Inc. ("Auffenberg Enterprises"),[8] which owned automobile dealerships and other investments located in St. Clair County, Illinois.  Auffenberg Enterprises and Kapok Management entered into a Management Agreement dated September 29, 2000, whereby Kapok Management, as a management consulting business, ostensibly operated Auffenberg Enterprises from the Virgin Islands.  Id. ¶¶ 22 & 79.  Like Fagan, Ferguson and Jackson, Auffenberg also began to promote Kapok Management to other individuals.

On October 11, 2000, Auffenberg incorporated St. Clair I, LLC ("St. Clair I") in Nevada.  St. Clair I and Kapok Management also entered into a Management Agreement, dated October 11, 2000.  Again, Kapok Management agreed to operate from the Virgin Islands the various businesses of St. Clair I in the

---

8.  Auffenberg Enterprises was incorporated on October 20, 1987 under the laws of Illinois.  Second Superseding Indictment ¶ 23.

United States.[9]  Id. ¶ 80.  On May 10, 2001, Auffenberg assigned

his partnership interest in Kapok Management to St. Clair II

Holdings VI, LLC ("St. Clair II").  The assignment was made

retroactively effective as of November 28, 2000.

From 1999 until 2002, the Kapok Management limited

partners claimed significant tax exemptions and credits pursuant

to the Kapok Management beneficiary certificate.  In 1999, ten

partners claimed $2,774,437 in tax credits and paid only

$1,675,071 in taxes to the Virgin Islands.  In 2000, the number

was thirty-six partners who claimed $22,686,875 in tax credits

and paid only $5,376,330 in Virgin Islands taxes.  In 2001,

forty-seven partners claimed $28,520,225.57 in tax credits and

paid the Virgin Islands only $6,702,335.32 in taxes.  Finally, in

2002, thirty-one partners claimed $20,144,211 in tax credits and

paid only $4,222,476.27 in Virgin Islands taxes.

II.

A motion to dismiss under Rule 12(b)(3)(B) of the

Federal Rules of Criminal Procedure is a challenge to the

sufficiency of the indictment.  The Supreme Court has explained:

> [A]n indictment is sufficient if it, first,
> contains the elements of the offense charged
> and fairly informs a defendant of the charge
> against which he must defend, and, second,
> enables him to plead an acquittal or

---

9.  Auffenberg Enterprises and St. Clair I purportedly owned the
following businesses:  (1) Interstate Marketing Service; (2)
Auffenberg Ford, Inc.; (3) Auffenberg Hyundai, Inc.; (4)
Auffenberg Imports, Inc.; (5) Auffenberg Motors of Illinois,
Inc.; (6) Auffenberg Lincoln Mercury, Inc.; (7) Auffenberg
Chrysler-Plymouth, Inc.; and (8) Auffenberg Ford North, Inc.

> conviction in bar of future prosecutions for
> the same offense.  It is generally sufficient
> that an indictment set forth the offense in
> the words of the statute itself, as long as
> "those words of themselves fully, directly,
> and expressly, without any uncertainty or
> ambiguity, set forth all the elements
> necessary to constitute the offence intended
> to be punished."

Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United

States v. Carll, 105 U.S. 611, 612 (1882)).

In considering a motion to dismiss, we must accept the

factual allegations contained in the indictment as true and

cannot weigh the sufficiency of the Government's evidence.

United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir.

2000).  At this stage we must merely determine whether the

indictment is legally sufficient on its face.

As mentioned above, the Second Superseding Indictment

contains thirty-five counts.  In their motions to dismiss,

Auffenberg and Ferguson argue that the charges in the said

indictment are insufficient because they are premised on two

sections of the Internal Revenue Code, 26 U.S.C. §§ 932(c) and

934(b).  Specifically, defendants assert that the term "bona fide

resident of the Virgin Islands" found in § 932(c) and the term

"income effectively connected to the conduct of a trade or

business within the Virgin Islands" found in § 934(b) are void

for vagueness and thus violate their rights to due process under

the Fifth Amendment to the United States Constitution.

Section 932(c) provides:

Treatment of Virgin Islands residents. —
(1) Application of subsection. — This
subsection shall apply to an individual for
the taxable year if—
    (A) such individual is a bona fide
    resident of the Virgin Islands at the
    close of the taxable year, or
    (B) such individual files a joint return
    for the taxable year with an individual
    described in subparagraph (A).
(2) Filing requirement. — Each individual to
whom this subsection applies for the taxable
year shall file an income tax return for the
taxable year with the Virgin Islands.
(3) Extent of income tax liability. — In the
case of an individual to whom this subsection
applies in a taxable year for purposes of so
much of this title (other than this section
and section 7654) as relates to the taxes
imposed by this chapter, the Virgin Islands
shall be treated as including the United
States.
(4) Residents of the Virgin Islands.—In the
case of an individual—
    (A) who is a bona fide resident of the
    Virgin Islands at the close of the
    taxable year,
    (B) who, on his return of income tax to
    the Virgin Islands, reports income from
    all sources and identifies the source of
    each item shown on such return, and
    (C) who fully pays his tax liability
    referred to in section 934(a) to the
    Virgin Islands with respect to such
    income,
for purposes of calculating income tax
liability to the United States, gross income
shall not include any amount included in
gross income on such return, and allocable
deductions and credits shall not be taken
into account.

Section § 934(b) reads:

Reductions permitted with respect to certain
income.—
(1) In general.—Except as provided in
paragraph (2), subsection (a) shall not apply
with respect to so much of the tax liability
referred to in subsection (a) as is
attributable to income derived from sources

-12-

within the Virgin Islands or income
effectively connected with the conduct of a
trade or business within the Virgin Islands.
(2) Exception for liability paid by citizens
or residents of the United States.—Paragraph
(1) shall not apply to any liability payable
to the Virgin Islands under section 932(b).
...
(4) Determination of income source, etc.—The
determination as to whether income is derived
from sources within the Virgin Islands or the
United States or is effectively connected
with the conduct of a trade or business
within the Virgin Islands or the United
States shall be made under regulations
prescribed by the Secretary.

The Fifth Amendment to the United States Constitution
states, in relevant part, that "[n]o person shall ... be deprived
of ... liberty ... without due process of law."  U.S. CONST. amend
V.  The United States Constitution is "designed to maximize
individual freedoms within a framework of ordered liberty."
Kolender v. Lawson, 461 U.S. 352, 357 (1983).  Consequently,
"[s]tatutory limitations on those freedoms are examined for
substantive authority and content as well as for definiteness or
certainty of expression."  Id.

Due process mandates that individuals must be given
"fair warning" of what constitutes criminal conduct.  United
States v. Lanier, 520 U.S. 259, 265 (1997).  The requirement of
fair warning has created the "void-for-vagueness doctrine."  The
Supreme Court has declared:  "[T]he void-for-vagueness doctrine
requires that a penal statute define the criminal offense with
sufficient definiteness that ordinary people can understand what
conduct is prohibited and in a manner that does not encourage

-13-

arbitrary and discriminatory enforcement."  Kolender, 461 U.S. at 357.  "'The ... principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'"  Lanier, 520 U.S. at 265 (quoting Bouie v. City of Columbia, 378 U.S. 347, 351 (1964) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)).  Embodied in this guarantee is the long held concept that "[n]o one may be required ... to speculate as to the meaning of penal statutes."  City of Chicago v. Morale, 527 U.S. 41, 58 (1999).  "The uncertainty of a tax law, like all questions of vagueness, is decided by the court as an issue of law."  United States v. Mallas, 762 F.2d 361, 364 n.4 (4th Cir. 1985).

A statute fails to provide "fair warning" when it is so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application."  Lanier, 520 U.S. at 266.  A statute is not vague, however, simply because it requires interpretation.  "Statutes need not ... achieve 'meticulous specificity,' which would come at the cost of 'flexibility and reasonable breadth.'"  Arriaga v. Mukasey, 521 F.3d 219, 224 (2d. Cir. 2008) (quoting Grayned v. City of Rockford, 408 U.S. 104, 110 (1972)).  "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  Jordan v. De George, 341 U.S. 223, 231-32 (1951) (citing Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)).

Moreover, vagueness "may be overcome in any specific case where reasonable persons would know that their conduct is at risk." Maynard v. Cartwright, 486 U.S. 356, 361 (1988).  In cases such as this that do not implicate the First Amendment to the United States Constitution, statutes that are challenged as vague must be "judged on an as-applied basis" and "in the light of the facts of the case at hand."  Id.; United States v. Mazurie, 419 U.S. 544, 551 (1975).  Nevertheless, "[i]f defendants in a tax case could not have ascertained the legal standards applicable to their conduct, criminal proceedings may not be used to define and punish an alleged failure to conform to those standards."  United States v. Harris, 942 F.2d 1125, 1131 (7th Cir. 1991) (quoting Mallas, 762 F.2d at 361).

III.

We will first consider Count 1 of the Second Superseding Indictment.  It charges that:  (1) the defendants conspired to commit wire fraud against the Virgin Islands and its agencies in violation of 18 U.S.C. §§ 371 and 1343; and (2) the defendants conspired to defraud the United States by "impeding, impairing, obstructing and defeating the lawful governmental functions of the Treasury Department and the Internal Revenue Service in the ascertainment, computation, assessment, and collection of revenue:  namely, United States income taxes," also in violation of 18 U.S.C. § 371.  Second Superseding Indictment ¶ 35.

-15-

The scheme alleged in Count 1 of the Second Superseding
Indictment is complex.  It states that the defendants conspired
to make materially false statements, representations and promises
to the IDC to obtain the Kapok Management beneficiary
certificate.  Furthermore, once the defendants obtained the
beneficiary certificate, they continued to make false statements
to claim tax exemptions and credits thereunder and encouraged
other Kapok Management limited partners to do the same.  As a
result, it is alleged that defendants "fraudulently reduced the
income taxes due and owing to the United States or to the Virgin
Islands." Id. ¶ 38.

The current indictment charges that these tax
exemptions and credits were claimed through the "management fees"
paid by United States taxpayers to Kapok Management.  It is
alleged that Kapok Management was essentially used as a pass
through so that its limited partners could claim substantial tax
exemptions and credits under the beneficiary certificate.
Limited partners would pay Kapok Management "management fees,"
and the limited partners, who were also hired as employees, would
then receive that same money back from Kapok Management as a
salary.  The Government maintains that these transactions were
shams, intended only to reap substantial tax benefits to which
the limited partners were not entitled.

Moreover, Count 1 alleges that certain limited
partners, including defendant Auffenberg, were not entitled to
any tax benefits conferred by the Kapok Management beneficiary

certificate because they were not bona fide residents of the
Virgin Islands and because the income for which they claimed tax
benefits was not "effectively connected with the conduct of a
trade or business within the Virgin Islands."

The gravamen of Count 1, in defendants' view, is that
they conspired to claim tax exemptions and credits under Kapok
Management's beneficiary certificate to which they were not
entitled.  Defendants contend that to prove the charges in Count
1 the Government would need to prove that the defendants
conspired to claim tax exemptions for individuals who were not
"bona fide residents of the Virgin Islands" under § 932(c) and
who did not have "income effectively connected with the conduct
of a trade or business within the Virgin Islands" under § 934(b).
Since it is the defendants' position that those provisions are
impermissibly vague, they argue that Count 1 must be dismissed.
The Government counters that this count is not based upon
§§ 932(c) and 934(b) but instead on a "sham transaction theory."

"[I]t is settled federal tax law that for transactions
to be recognized for tax purposes they must have economic
substance."  Lerman v. Commissioner of Internal Revenue, 939 F.2d
44, 52 (3d Cir. 1991).  A transaction that lacks economic
substance is commonly referred to as a "sham transaction."  The
Government argues that if the management fees paid by the limited
partners in Kapok Management lacked "economic substance," that
is, the transactions were "sham transactions," it will never need
to prove that the defendants were not in compliance with

-17-

§§ 932(c) and 934(b).  Proving the sham, according to the
Government, is enough to prove Count 1.

The defendants respond that this court "must take into
account [the underlying tax] rules in determining whether the
transaction at issue is a sham."  Reply of Ferguson to Defs.'
Mot. to Dismiss at 6 (citing Horn v. Commissioner, 968 F.2d 1229,
1238 (D.C. Cir. 1992)).  We disagree.

Our Circuit, like the Second, Fourth, Ninth and
Eleventh Circuits, has not followed the District of Columbia
Circuit on this point.  See Horn, 968 F.2d at 1238 n.12.
Instead, our Court of Appeals has reasoned:

> We can forgo examining the intersection of
> these statutory details, for pursuant to
> Gregory v. Helvering, 293 U.S. 465 (1935),
> and Knetsch v. United States, 364 U.S. 361
> (1960), courts have looked beyond taxpayers'
> formal compliance with the Code and analyzed
> the fundamental substance of transactions.
> Economic substance is a prerequisite to the
> application of any Code provision allowing
> deductions.  Lerman v. Commissioner, 939 F.2d
> 44, 52 (3d Cir. 1991).  It is the
> Government's trump card; even if a
> transaction complies precisely with all
> requirements for obtaining a deduction, if it
> lacks economic substance it "simply is not
> recognized for federal taxation purposes, for
> better or for worse."  ACM Partnership v.
> Commissioner, 157 F.3d 231, 261 (3d Cir.
> 1998)(quoting Lerman, 939 F.2d at 45); see
> Winn-Dixie Stores, Inc. v. Commissioner, 113
> T.C. 254, 278 (1999), aff'd 254 F.3d 1313
> (11th Cir. 2001).  The rationale behind the
> Gregory and Knetsch line of cases is that
> courts should not elevate form over substance
> by rewarding taxpayers who have engaged in
> transactions that lack any purpose save that
> of tax savings.  The taxpayer has the burden
> of showing that the form of the transaction
> accurately reflects its substance, and the

-18-

> deductions are permissible. <u>National Starch</u>
> <u>and Chemical Corp. v. Commissioner</u>, 918 F.2d
> 426, 429 (3d Cir. 1990).

<u>IRS v. Cm Holdings (In re Cm Holdings)</u>, 301 F.3d 96, 102 (3d Cir.
2002).

Accordingly, if the Government can prove that the
payments to and from Kapok Management were sham transactions, it
will not need to prove that defendants conspired to claim tax
exemptions and credits to which they were not entitled as a
result of their failure to meet the requirements under §§ 932(c)
and 934(b).

Even if defendants are correct, Count 1 need not be
dismissed.  To claim tax exemptions and credits under Kapok
Management's beneficiary certificate and the Internal Revenue
Code, the taxpayer, we repeat, must be a bona fide resident of
the Virgin Islands <u>and</u> have "income effectively connected with
the conduct of a trade or business within the Virgin Islands."
If the taxpayer claiming the exemptions and credits fails to meet
either test, then that taxpayer is not entitled to the benefits
conferred by the Kapok Management beneficiary certificate and the
Internal Revenue Code.

With respect to the phrase "bona fide resident of the
Virgin Islands" in § 932(c), defendants point to the fact that
there was no set standard for the number of days an individual
must be present in the Virgin Islands to be deemed a "bona fide
resident."  Therefore, according to defendants, it was impossible
to know what "bona fide resident of the Virgin Islands" meant.

-19-

We acknowledge that it was not until October 23, 2004, after the events alleged in this Second Superseding Indictment, that Congress enacted 26 U.S.C. § 937, which defines "bona fide resident of the Virgin Islands" as it is used in § 932(c) as:

> a person —
>
> (1) who is present for at least 183 days during the taxable year in ... the Virgin Islands ... and
>
> (2) who does not have a tax home (determined under the principles of section 911(d)(3) without regard to the second sentence thereof) outside such specified possession during the taxable year and does not have a closer connection (determined under the principles of section 7701(b)(3)(B)(ii)) to the United States or a foreign country than to such specified possession.

26 U.S.C. § 937(a).

Nonetheless, before this enactment, the term "bona fide resident of the Virgin Islands" was not impermissibly vague. First, the term "bona fide" is not a technical term that requires further explanation to avoid running afoul of the Fifth Amendment. Black's Law Dictionary defines "bona fide" as "[m]ade in good faith; without fraud or deceit" and "[s]incere; genuine." Black's Law Dictionary (8th ed. 2004). It is in essence a synonym for truthful or honest. A person of "common intelligence" would not need to "guess at its meaning." Lanier, 520 U.S. at 266.

As to residency, defendants concede that it is determined through a facts and circumstances analysis but maintain that this analysis is too subjective to form the basis

-20-

of criminal liability.  We are not persuaded.  Prior to
October 23, 2004, a United States Treasury regulation was in
effect which provided:

> An alien actually present in the [Virgin
> Islands] who is not a mere transient or
> sojourner is a resident of the [Virgin
> Islands] for purposes of the income tax.
> Whether he is a transient is determined by
> his intentions with regard to the length and
> nature of his stay.  A mere floating
> intention, indefinite as to time, to return
> to another country is not sufficient to
> constitute him a transient.  If he lives in
> the [Virgin Islands] and has no definite
> intention as to his stay, he is a resident.
> One who comes to the [Virgin Islands] for a
> definite purpose which in its nature may be
> promptly accomplished is a transient; but, if
> his purpose is of such a nature that an
> extended stay may be necessary for its
> accomplishment, and to that end the alien
> makes his home temporarily in the [Virgin
> Islands], he becomes a resident, though it
> may be his intention at all times to return
> to his domicile abroad when the purpose for
> which he came has been consummated or
> abandoned.

26 C.F.R. § 1.871-2(b).

        While the Treasury regulation does not specify how many
days an individual must be in the Virgin Islands to be deemed a
resident thereof, it clearly informed the defendants that "a mere
transient or sojourner" is not a resident.

        The allegations in Count 1 regarding residency include:

- Defendants assisted some co-conspirators
  to make false claims of Virgin Islands
  residency.  ¶ 48.

- On or about December 15, 1999, Fagan
  purchased the three residential
  buildings and land at 57 and 58 Estate
  Boetzberg, also known as "Whispering

Palms," on St. Croix, Virgin Islands,
which was then temporarily used as the
place of business in the Virgin Islands
for Kapok Management, and served as the
Virgin Islands physical home address for
a number of new Kapok Management limited
partners.  ¶ 58.

- On or about March 21, 2000, for the
  fourth quarter of 1999, Ferguson, on
  behalf of Kapok Management, falsely
  certified under penalties of perjury in
  an "Affidavit of IDC Beneficiary
  Regarding Residency of Employees" that
  the list of beneficiary employees and
  identification of residency attached to
  the affidavit was true and complete.  In
  fact, Kapok Management did not have a
  sufficient factual basis for all the
  assertions made in the Affidavit and did
  nothing to verify residency of new
  limited partners who were called "senior
  project managers," but who were not true
  employees.  ¶ 62.

- On or about June 6, 2001, Jackson
  advised a Kapok Management limited
  partner by email that he was
  "recommending to most of the partners to
  make quarterly estimates even if the
  amount is small in order to help bolster
  their residency." ¶71.

- On or about December 4, 2002, Auffenberg
  prepared and signed a fraudulent lease
  for #34 Villa Madeleine Bedroom #Two,
  Christiansted, St. Croix, Virgin
  Islands, for the term of December 1,
  2002, to December 1, 2003, to a Kapok
  Management limited partner he recruited.
  The lease was fraudulent in that
  Auffenberg had already leased #34 Villa
  Madeleine to the United States Coast
  Guard and did not have legal possession
  of the property.  The limited partner
  never stayed in the unit.  ¶74.

- On December 16, 2004, Jackson falsely
  swore before a Special Meeting of the
  Board of the EDC that he had no
  knowledge that a Kapok Management

limited partner was not a bona fide resident of the Virgin Islands .... ¶77.

- In or about October 2000, Auffenberg entered into a fraudulent lease, backdated to July 1, 2000, for Bedroom Number Two of Unit 39 of the Villa Madeleine Condominiums in St. Croix, Virgin Islands.  The lease was with the Kapok Management limited partner who recruited Auffenberg.  This partner did not actually purchase Unit 39 until December 18, 2000.  Even after that date Auffenberg never stayed in Unit 39. ¶ 88.

- On or about May 25, 2001, Auffenberg and his wife transferred title to their home in Swansea, Illinois from Auffenberg and his wife jointly, to being owned by his wife alone, who then placed the home in her trust.  ¶ 100.

- On or about October 19, 2001, Auffenberg purchased Unit 34, Villa Madeleine Condominium, St. Croix, Virgin Islands, which he falsely represented to be his place of residence in the Virgin Islands, even though shortly thereafter he leased full possession of the condominium to the United States Coast Guard.  ¶ 103.

- On December 4, 2002, Fagan and Jackson suggested that the [Undercover IRS Agent] join a Virgin Islands golf club to help with his claim of residency and reminded him to be sure to tell the golf club that he lived in the Virgin Islands.  ¶ 114.

- On December 4, 2002, Jackson counseled the [Undercover IRS Agent] on how to respond to challenges to his Virgin Islands residency, even though the [Undercover IRS Agent] had explained that he had no real residence in the Virgin Islands.  Despite the [Undercover IRS Agent's] admission, Jackson also told the [Undercover IRS Agent] to

advise the State of Illinois Department of Revenue that he now resided in the Virgin Islands.  ¶ 117.

- On January 20, 2003, Auffenberg advised the [Undercover IRS Agent] that about once a month when [he] visited the Virgin Islands, he would go into the Kapok Management office each morning to find someone with whom to occupy his time (lunch, fishing, dinner) for a few days and then go home.  ¶ 119.

- On January 21, 2003, Ferguson cautioned the limited partners that they should stop being careless in saying that they really live someplace in the mainland United States because, "We can't open your mouth and make the right words come out."  ¶ 121.

- From August 19, 2002 and continuing through February 18, 2003, Kapok Management assisted the [Undercover IRS Agent] with his purported Virgin Islands residency by regularly collecting his mail delivered in the Virgin Islands and forwarding it to his actual address in Chicago, Illinois.  Kapok Management regularly contacted the [Undercover IRS Agent] by mail, fax, and telephone at his Chicago, Illinois location, and never at his purported Virgin Islands address.  ¶ 126.

These allegations are sufficient to charge the individual defendants as being aware that certain limited partners of Kapok Management were not "bona fide residents of the Virgin Islands" but rather mere "transient[s] or sojourner[s]," and thus not entitled to favorable tax treatment under Kapok Management's beneficiary certificate or the Internal Revenue Code.  The Second Superseding Indictment sets forth a scenario wherein the defendants took significant steps to create an

appearance of residency when they knew that the reality was otherwise.  We must judge § 932(c) as applied to these defendants and "in the light of the facts of the case at hand."  Maynard, 486 U.S. at 361; Mazurie, 419 U.S. at 551.  Accordingly, the term "bona fide resident of the Virgin Islands" contained in § 932(c) as referenced in Count 1 of the Second Superseding Indictment, is not void for vagueness.

The question of whether the phrase "income effectively connected with the conduct of a trade or business within the Virgin Islands" as used in 26 U.S.C. § 934(b)(1) is vague is another matter.  The phrase is not defined in § 934. Significantly, § 934(b)(4) provides:  "The determination as to whether income is ... effectively connected with the conduct of a trade or business within the Virgin Islands or the United States shall be made under regulations prescribed by the Secretary."  No such regulations were promulgated until 2005 after the time period relevant here.

As set forth earlier, a criminal statute must give a defendant fair warning as to what is proscribed.  See Lanier, 520 U.S. at 265.  This is as true in the tax context as in any other.  Congress clearly stated in § 934(b)(4) itself that additional guideposts were necessary for taxpayers.  It explicitly directed the Secretary of the Treasury to prescribe regulations under which "[t]he determination as to whether income is  ... effectively connected ... [to] the Virgin Islands ... shall be made ...."  26 U.S.C. § 934(b)(4) (emphasis added).  It follows

that without these regulations, the determination cannot be made, at least under the circumstances presented here.  Unfortunately, the Secretary did not fulfill his statutory responsibility during the relevant time period.  Because of this inaction, the defendants before us were not provided fair warning as to what was criminal conduct under that provision.  <u>Lanier</u>, 520 U.S. at 265.  As the Supreme Court explained, "[n]o one may be required ... to speculate as to the meaning of penal statutes."  <u>Morale</u>, 527 U.S. at 58.  We do not see how defendants here can be criminally liable for a violation of a statute which Congress itself recognized had no contours without further action by the Secretary of the Treasury.  In sum, Congress itself has essentially declared the language at issue in § 934(b) to be void for vagueness without further definition.  Consequently, we will preclude the Government from proving Count 1 through evidence that defendants' income did not meet the specific requirements of § 934(b).

At this stage, Count 1 of the Second Superseding Indictment contains sufficient allegations to go forward on the sham transaction theory and on the basis of a conspiracy of defendants falsely to claim that certain limited partners in Kapok Management were "bona fide residents of the Virgin Islands" when in fact they were not.  Consequently, we will not dismiss Count 1 of the Second Superseding Indictment.[10]

---

10.  Count 35 of the Second Superseding Indictment seeks
                                              (continued...)

IV.

We will next turn to the question whether Counts 2, 3, and 4 of the Second Superseding Indictment are sufficient to avoid dismissal.  All three counts allege that the defendants, "aided and abetted by each other and by others, did willfully attempt to evade and defeat substantial income taxes ... due and owing by James A. Auffenberg, Jr., a resident of Swansea, Illinois ... by failing to make an income tax return ... as required by law, to any proper officer of the IRS" in the years 2000, 2001 and 2002 in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.[11]  Second Superseding Indictment ¶¶ 140-45.

These counts essentially contain two allegations:  (1) Auffenberg, aided and abetted by the other defendants, failed to submit income tax returns in those years to the IRS; and (2)

_____

10(...continued)
forfeiture from defendants, Fagan, Ferguson, Jackson, Kapok and Kapok Management, pursuant to 18 U.S.C. § 981(a)(1)(c), as incorporated by 28 U.S.C. § 2461(c), of all property and proceeds traceable to the alleged violations of 18 U.S.C. § 1343, including those in Count 1.  Thus, as a derivative count, we will decline to dismiss Count 35.

11.  The federal aiding and abetting statute provides:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. §2.

-27-

Auffenberg, aided and abetted by the other defendants, evaded
United States income taxes.  The first part, that Auffenberg
failed to submit income tax returns to the IRS, hinges on
§ 932(c).  If Auffenberg was a bona fide resident of the Virgin
Islands at the end of the taxable year, he was not required to
submit an income tax return to the IRS but only to the BIR.  As
we have discussed at length above, considered in the context of
the allegations in the Second Superseding Indictment, the phrase
"bona fide resident of the Virgin Islands" was not vague in
violation of the Due Process Clause of the Fifth Amendment at the
time in question.

       The second allegation asserts that Auffenberg evaded
taxes.  It describes him as claiming income tax exemptions and
credits under the Kapok Management beneficiary certificate to
which he was not entitled.  The Government again maintains that
it will proceed on these counts under the sham transaction
theory.  For the same reasons outlined above, the Government may
proceed in this manner but without implicating non-compliance
with § 934(b).  As with Count 1, the Government may also prove in
connection with Counts 2 through 4 of the Second Superseding
Indictment that Auffenberg was not a "bona fide resident of the
Virgin Islands" so as to be able to reduce his tax obligations.
To have claimed properly tax exemptions and credits pursuant to
the Kapok Management beneficiary certificate for the years 2000,
2001 and 2002, Auffenberg needed to be a bona fide resident of
the Virgin Islands and have earned "income effectively connected

-28-

with the conduct of a trade or business within the Virgin
Islands."  Since we have determined that the phrase "bona fide
resident of the Virgin Islands" in § 932(c) was not impermissibly
vague, the Second Superseding Indictment is sufficient in this
regard with respect to Counts 2, 3 and 4.  However, the
Government may not establish a violation of § 934(b) since we
have concluded that it was, at all times relevant, impermissibly
vague.

V.

Defendants concede that Counts 5 through 13 do not
directly implicate the definitions of the phrases "bona fide
resident of the Virgin Islands" and "income effectively connected
with the conduct of a trade or business within the Virgin
Islands" under 26 U.S.C. § 932(c) and 26 U.S.C. § 934(b),
respectively.  Defendants nevertheless argue that "the trial of
these counts would inevitably implicate discussions of Mr.
Auffenberg's involvement with ... Kapok [Management], the
considerations that motivated the formation of St. Clair I ...
and the transfer of Mr. Auffenberg's interests to it, and how —
if at all — the alleged false statements are material."  Defs.'
Joint Supplemental Mem. at 15-16.

Counts 5 through 13 allege as follows:

- <u>Count 5</u>.  Filing a false U.S. Return of
  Partnership Income, Form 1065, for the
  2000 tax year in violation of 26 U.S.C.
  § 7206(1) against defendant Auffenberg.

- <u>Count 6</u>.  Filing a false U.S. Income Tax
  Return for an S Corporation, Form 1120-

-29-

> S, for the 2000 tax year in violation of
> 26 U.S.C. § 7206(1) against defendants,
> Auffenberg and Auffenberg Enterprises.
>
> • Count 7.  Filing a false U.S. Income Tax
>   Return for an S Corporation, Form 1120-
>   S, for the 2000 tax year in violation of
>   26 U.S.C. § 7206(1) against defendant
>   Auffenberg.
>
> • Count 8 through 13.  Filing a false U.S.
>   Tax Return for an S Corporation, Form
>   1120-S, for the 2000 tax year in
>   violation of 26 U.S.C. § 7206(1) against
>   defendant Auffenberg for the following
>   corporations:
>   • Count 8.  Auffenberg Hyundai, Inc.
>   • Count 9.  Auffenberg Imports, Inc.
>   • Count 10. Auffenberg Motors of
>     Illinois, Inc.
>   • Count 11. Auffenberg Lincoln
>     Mercury, Inc.
>   • Count 12. Auffenberg Chrysler-
>     Plymouth, Inc.
>   • Count 13. Auffenberg Ford North,
>     Inc.

Second Superseding Indictment ¶¶ 146-53.

Our ruling concerning § 934(b) does not prohibit all evidence regarding Auffenberg's involvement with Kapok Management in connection with Counts 5 through 13.  The Government is only precluded from attempting to prove that Auffenberg's income was not "effectively connected with the conduct of a trade or business within the Virgin Islands" under § 934(b).  From the allegations in the Second Superseding Indictment, the Government may attempt to prove Counts 5 through 13 without relying on a violation of that section of the Internal Revenue Code.  Accordingly, we will not dismiss those counts.

-30-

VI.

We must next decide if Counts 14 through 19 should be dismissed, at least in part, because they require proof of "bona fide residen[cy] of the Virgin Islands" and "income effectively connected with the conduct of a trade or business within the Virgin Islands."  Counts 14, 16 and 18 allege that Auffenberg willfully filed tax returns that:  (1) falsely claimed "he was a bona fide resident of the Virgin Islands in the year[s] 2000[, 2001, and 2002] and was entitled to a reduction in tax ... because his ... distributive share from Kapok Management was income effectively connected with the conduct of a trade or business within the Virgin Islands;" and (2) falsely "claimed [as] deductions against income the ... 'management fees' paid to Kapok Management," in violation of 26 U.S.C. § 7206(1).  Second Superseding Indictment ¶¶ 155, 159, & 163.  Counts 15, 17 and 19 allege that defendants, Auffenberg Enterprises, Fagan, Ferguson, Jackson, Kapok, Kapok Management, St. Clair I, and St. Clair II, aided and assisted Auffenberg in the crimes alleged in Counts 14, 16 and 18, in violation of 26 U.S.C. § 7206(2).  Id. ¶¶ 157, 161 & 165.

The phrase "income effectively connected with the conduct of a trade or business within the Virgin Islands" under § 934(b) is impermissibly vague.  As a result, the Government may not establish that Auffenberg falsely claimed that he was entitled to the tax reduction under Kapok Management's beneficiary certificate because his "distributive share from

-31-

Kapok Management was income effectively connected with the conduct of a trade or business within the Virgin Islands." Although § 934(b) is not explicitly cited in Counts 14 through 19 of the Second Superseding Indictment, the crucial language of that provision is included verbatim. Thus, we will preclude the Government from relying on any evidence of a violation of § 934(b) with respect to Counts 14, 16, and 18. The Government may, however, introduce evidence that Auffenberg was not a bona fide resident of the Virgin Islands, and thus not entitled to any tax benefits under § 934(b). Accordingly, we will not dismiss these counts.

Furthermore, defendants, Auffenberg Enterprises, Fagan, Ferguson, Jackson, Kapok, Kapok Management, St. Clair I, and St. Clair II, can be criminally liable for aiding and assisting Auffenberg only to the extent that the liability is predicated upon § 932(c). Again, the Government cannot predicate its case on non-compliance with § 934(b). Accordingly, we will decline to dismiss Counts 15, 17, and 19 with regard to the allegations that defendant Auffenberg falsely claimed tax reductions for his distributive share from Kapok Management.

Counts 14 through 19 also contain information that Auffenberg falsely claimed as "deductions against income the ... 'management fees' paid to Kapok Management" although "he was not entitled to the deductions against income claimed for the ... sham 'management fees' paid to Kapok Management." This

-32-

allegation falls squarely within the Government's sham transaction theory and may proceed.

VII.

Count 20 charges that all defendants violated 18 U.S.C. § 1343, that is, the federal statute which prohibits wire fraud and aided and abetted each other in doing so in violation of 18 U.S.C. § 2.  Count 20 states:

> [H]aving devised the scheme to defraud the United States Virgin Islands of tax revenue to which it was entitled, by means of materially false and fraudulent statements, representations, and promises ... knowingly cause[d] to be transmitted by means of wire or radio communication in interstate and foreign commerce signs and signals, that is, the wire transfer of $2,100,000.00 from the Union Planters bank account of St. Clair I ... to the First Bank Virgin Islands savings bank account of Kapok Management, which then on December 30,2002, issued and deposited into the Virgin Islands bank account of St. Clair II ... its check number 5756 in the amount of $1,976,340.74, which sum the agent of St. Clair I ... and St. Clair II ... then on the same day deposited by check number 1039 back into the Union Planters bank account of St. Clair I ....

Second Superseding Indictment ¶ 167.

The Government maintains that it will proceed with Count 20 based upon a sham transaction theory.  As with the other previously discussed counts and for the same reasons stated above, this count of the Second Superseding Indictment is sufficient to withstand dismissal.[12]

---

12.  Nor will we dismiss Count 35 which seeks forfeiture based on the alleged violations of 18 U.S.C. § 1343.  See footnote 10,

(continued...)

Furthermore, the Government may introduce evidence to support its allegations by demonstrating a violation of § 932(c). That is, the Government may prove that the defendants used wire communications to commit fraud by falsely claiming bona fide residency in the Virgin Islands for at least one of Kapok Management's limited partners.  The Government, of course, may not attempt to establish a violation of § 934(b) for the reasons stated above.

VIII.

Count 21 states that all defendants conspired "to commit the crime of making materially false and fraudulent statements and representations on matters within the jurisdiction of agencies of the government of the Virgin Islands, namely, the Economic Development Commission (EDC), formerly known as the Industrial Development Commission (IDC), and the Bureau of Internal Revenue (BIR)" in violation of 14 V.I.C. § 551.  Second Superseding Indictment ¶ 169.  Specifically, it is alleged that defendants conspired to make false statements regarding Kapok Management's business plan, the residency of its limited partners and employees, and its gross sales and eligible income.

The Second Superseding Indictment sets forth that the conduct of defendants constituted a sham transaction.  It also references the failure of defendants to be a "bona fide resident[s] of the Virgin Islands" under §932(c).  Accordingly,

12(...continued)
supra.

-34-

Count 21 stands.  In support of this count, the Government may not rely on any violation of § 934(b).

IX.

Count 22 of the Second Superseding Indictment charges that defendants, Jackson, Kapok and Kapok Management made "materially false and fraudulent statements and representations in a matter within the jurisdiction of the ... EDC," in violation of 14 V.I.C. § 843.  Second Superseding Indictment at ¶ 183.  It specifically alleges that while "appearing as a sworn witness before a Special Meeting of Economic Development Commission," Jackson, as the representative of Kapok and Kapok Management falsely declared that "We had no knowledge whatsoever that [Gary Payne, a Kapok Management limited partner,] was not a resident of the Virgin Islands." Id.  In addition, Jackson was asked, "I mean there is an allegation that Kapok facilitated [Payne's] ability to conduct this scheme by funneling funds through you, then back to him stateside as if it was funds earned here ...." Jackson answered, "[w]e had no knowledge of that," which the Government alleges was untruthful.  Id.

Turning to Jackson's first statement, there are no allegations in the Second Superseding Indictment regarding Gary Payne's residency.  Thus, it is impossible to determine whether, as applied to his circumstances, the phrase bona fide resident of the Virgin Islands is vague.  We will therefore decline at this time to dismiss Count 22 but must await the trial.  Of course, the Government will need to prove facts that establish that Gary

-35-

Payne was not a bona fide resident of the Virgin Islands.  The
second statement in Count 22 fits precisely into the Government's
sham transaction theory.  Therefore, we will not dismiss this
count against Jackson.

X.

Defendants, Fagan, Ferguson and Jackson seek dismissal
of Counts 23 through 31 which charge them with filing false tax
returns in 2000, 2001 and 2002 in violation of 33 V.I.C.
§ 1525(1).  These counts allege that they claimed tax credits for
"eligible income" under the Kapok Management beneficiary
certificate when it was "not eligible income from the conduct of
an ... approved trade or business within the Virgin Islands."
Second Superseding Indictment ¶¶ 185, 187, 189, 191, 193, 195,
197, 199, 201.

The Virgin Islands Code provides:

Whoever -

...

[w]illfully makes and subscribes any return,
statement, or other document, which contains
or is verified by a written declaration that
it is made under the penalties of perjury,
and which he does not believe to be true and
correct as to every material matter ... shall
be fined not more than $5,000 or imprisoned
not more than 3 years, or both, together with
the costs of prosecution.

33 V.I.C. § 1525(1).

To prove violations under § 1525(1), the Government
must demonstrate that:  (1) defendants made, subscribed and filed
income tax returns; (2) the tax returns were verified by a

written declaration made under the penalties of perjury; (3) the returns were false regarding a material matter; (4) defendants did not believe the income tax returns were true and correct as to that material matter; and (5) defendants acted willfully.[13]

Here, the alleged falsity regarding a material matter concerned the eligibility of the earned income of Fagan, Ferguson and Jackson for tax credits under the Kapok Management beneficiary certificate.  As a result, defendants maintain that these counts necessarily implicate §§ 932(c) and 934(b).

The Government concedes for purposes of Counts 23 through 31 that defendants Fagan, Ferguson and Jackson were bona fide residents of the Virgin Islands.[14]  With regard to the phrase "income effectively connected with the conduct of a trade or business within the Virgin Islands" contained in § 934(b), the

---

13.  We note that 29 V.I.C. § 725 provides:

> Any applicant or beneficiary who shall
> willfully make any false or fraudulent
> statement or representation as to any fact
> required or appropriate to the determination
> of the qualifications of eligibility of such
> applicant or beneficiary for benefits under
> this chapter, or for the continuation or
> extension of the same, or who shall willfully
> make or present any claim for benefits under
> this chapter knowing such claim to be false,
> fictitious or fraudulent, shall be fined not
> more than $25,000 or imprisoned not more than
> two years, or both.

The defendants are not, however, charged under this provision of the Virgin Islands Code.

14.  The Government does not rely upon the sham transaction theory for these counts.

Government contends that "[w]hatever the outer limits of ... 934
may be, [that section] merely provide[s] limitations on the
authority of the Virgin Islands to credit taxes sourced in the
Virgin Islands.  [That section] did not provide a self-executing
tax benefit to taxpayers.  The credit was limited to the business
activity <u>specified in the certificate</u> ...."  United States' Resp.
at 19 (emphasis in original).  We disagree.

Counts 23 through 31 allege that defendants Fagan,
Ferguson, and Jackson claimed income as "eligible income" when it
was not.  The Second Superseding Indictment states that "eligible
income" was:

> income derived from the business or industry
> for which the certificate is granted, in the
> DSB case, income effectively connected with
> [Kapok Management's] conduct of its approved
> trade or business within the Virgin Islands
> ... as specified in the certificate ....  <u>If
> the income was not effectively connected with
> the conduct of the approved trade or business
> within the Virgin Islands</u> or was income from
> clients located within the Virgin Islands,
> then <u>the income did not qualify</u> for any
> reduction ind United States income taxes or
> local taxes ....

Second Superseding Indictment ¶ 9 (emphasis added).

The certificate further specified:

> The grant of benefits hereinafter described
> is for the beneficiary or any successors
> approved by the Commission to conduct the
> business of owning and operating a designated
> service business providing financial,
> economic, and management consulting services,
> including business planning and development,
> estate planning, risk management, asset
> protection, financial analysis, financial
> planning, professional office restructuring,
> and general business and computer support

-38-

>           services to clients outside the United States
>           Virgin Islands.

Id. ¶ 61.

The tax benefits conferred by Kapok Management's beneficiary certificate were at all times limited first and foremost by §§ 932(c) and 934(b).  The Government is correct those sections of the Internal Revenue Code provide the outer limits on the ability of the Government of the Virgin Islands to provide tax exemptions and credits.  The Government of the Virgin Islands is obviously free to create economic incentive programs that provide tax credits and exemptions that are narrower than allowed under §§ 932 and 934.  At all times, however, the economic incentive programs created by the Government of the Virgin Islands must comport with the statutory requirements.

Since the Government concedes that Fagan, Ferguson and Jackson were bona fide residents of the Virgin Islands, it cannot establish that defendants violated the terms of Kapok Management's beneficiary certificate without establishing that they violated § 934(b).  This the Government cannot do, however, because § 934(b) is void for vagueness as applied to the facts alleged in the Second Superseding Indictment.  Accordingly, we will dismiss Counts 23 through 31 because those counts violate the rights of defendants, Fagan, Ferguson and Jackson, under the Fifth Amendment to the United States Constitution.

-39-

XI.

We now turn to Counts 32 and 33 of the Second Superseding Indictment, which state as follows:

- Count 32. Defendants Fagan, Ferguson, Jackson, Kapok and Kapok Management attempted to evade "substantial gross receipts taxes ... owed by ...Kapok Management ... by filing with the BIR from February 27, 2001 through January 30, 2002, monthly false returns for the 2001 tax year that included the claim of IDC exemption from tax for reported gross receipts which were not eligible for such exemption and that failed to report all gross receipts of Kapok Management ..." in violation of 33 V.I.C. § 1521. Second Superseding Indictment ¶ 203.

- Count 33. Defendants Fagan, Ferguson, Jackson, Kapok and Kapok Management attempted to evade "substantial gross receipts taxes ... owed by ...Kapok Management ... by filing with the BIR from February 28, 2002 through January 30, 2003, monthly false returns for the 2002 tax year that included the claim of IDC exemption from tax for all reported gross receipts when all reported gross receipts were not eligible for such exemption" in violation of 33 V.I.C. § 1521. Second Superseding Indictment ¶ 205.

Counts 32 and 33 are substantially similar to Counts 23 through 31, which were discussed above. Counts 32 and 33 allege that defendants, Fagan, Ferguson, Jackson, Kapok and Kapok Management, claimed gross receipts as "eligible income" when it in fact was not. The Government does not allege that any of

-40-

these defendants was not a bona fide resident of the Virgin
Islands.[15]

We need not review these two counts in detail because
they must be dismissed for precisely the same reasons as we will
dismiss Counts 23 through 31.  The Government cannot prove Counts
32 and 33 without demonstrating that the gross receipts were not
"effectively connected with the conduct of a trade or business
within the Virgin Islands."

XII.

Finally, we will consider Count 34 of the Second
Superseding Indictment, which states:

> Count 34.  Defendants Fagan, Ferguson and
> Kapok attempted to evade "gross receipts
> taxes ... owed by ... Kapok ... which was not
> an IDC beneficiary, by failing to file with
> the BIR any gross receipts tax return for the
> 2002 tax year and thereby failing to report
> and pay tax on the total of $710,000 in
> initial fees paid by new limited partners
> recruited to join Kapok Management ..., which
> Kapok ... collected and accounted for in the
> 2002 tax year, and by the affirmative act of
> filing with the BIR a false 1120S Corporate
> Income Tax Return in which Kapok ... falsely
> characterized the total gross receipts of
> $710,000 as 'reimbursement for expenses'" in
> violation of 33 V.I.C. § 1521.

Second Superseding Indictment ¶ 207.

There are two allegations against defendants Fagan,
Ferguson and Kapok in this count:  (1) they failed to file a
gross receipts tax return with the BIR in 2002 and thus avoided

_____

15.  Kapok is a Virgin Islands corporation.  Second Superseding
Indictment ¶ 19.  Kapok Management is a Virgin Islands
partnership.  Id. ¶ 20.

paying taxes on approximately $710,000 in gross receipts; and (2) they filed an 1120S Corporate Income Tax Return in that same year, falsely claiming the $710,000 as a reimbursement to Kapok for expenses when it should have been reported as gross receipts. This count does not implicate the tax exemptions and credits to which defendants were entitled under Kapok Management's beneficiary certificate. The Government will merely need to prove that the defendants falsely reported Kapok Management's gross receipts. Accordingly, we will not dismiss Count 34 of the Second Superseding Indictment.

XIII.

In conclusion, all counts in the Second Superseding Indictment are sufficient except for Counts 23 through 33 which will be dismissed.[16]

---

16. In addition to the arguments discussed at length above, defendant Ferguson also argues that the Second Superseding Indictment should be dismissed because: (1) the Attorney General of the Virgin Islands has exclusive jurisdiction to prosecute Counts 21 through 34; (2) it does not allege that Ferguson aided or abetted Auffenberg's tax evasion; and (3) Counts 21 through 34 are multiplicitous. We do not agree. First, The Honorable Raymond L. Finch, the undersigned's predecessor in this case, has previously ruled that Counts 21 through 34 are properly prosecuted by counsel for the Government pursuant to 48 U.S.C. § 1617. United States v. Auffenberg, Crim. A. No. 07-47 (Feb. 28, 2008). Second, the Second Superseding Indictment details how Ferguson aided and abetted Auffenberg. Third, Judge Finch previously denied the motion of Auffenberg to dismiss Counts 2 though 16, 18, 20 and 21 of the indictment for multiplicity. Id. (Feb. 21, 2008). Ferguson's argument regarding multiplicity fails for the same reason. See Blockburger v. United States, 284 U.S. 299, 304 (1932).